Filed 8/22/14  P. v. Ford-Howard CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DESHAWN GIOVANNI<br>FORD-HOWARD,<br><br>    Defendant and Appellant. | A139287<br><br>(Contra Costa County<br>Super. Ct. No. 051301233) |
| In re DESHAWN GIOVANNI<br>FORD-HOWARD,<br><br>    on Habeas Corpus. | A141336<br><br>(Contra Costa County<br>Super. Ct. No. 51301233) |

**INTRODUCTION**

After a brief jury trial, Deshawn Giovanni Ford-Howard was found guilty of first degree residential burglary; he was sentenced to four years in state prison.  He has filed an appeal and a petition for writ of habeas corpus, claiming that his trial counsel rendered ineffective assistance, among other claims.  We previously issued an order to show cause, and have ordered the petition consolidated with the appeal.

Prior to trial, Ford-Howard, hereafter petitioner, received a plea offer from the prosecutor.  He tried to accept the offer at the trial call, but learned that the offer had expired several days earlier.  Petitioner maintains that his trial counsel's error in failing to discover the plea offer's expiration date caused him to proceed to trial rather than to accept the favorable offer.  We need not address petitioner's other claims because

1

counsel's ineffectiveness in representing him in pretrial proceedings amounts to the ineffective assistance of counsel prohibited by the Sixth Amendment.

Accordingly, we will vacate the judgment of conviction. In the absence of any statement by the Attorney General regarding appropriate relief, we will order that petitioner be given the opportunity to accept the original plea offer and remand the matter for further proceedings consistent with the views expressed herein. We further order that petitioner be credited for time served. The appeal is dismissed as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Charged Offense*.

The victim of the burglary in this case, Varun Kalra, lived on Anchor Drive in Bay Point, Contra Costa County. Deborah Forman lived across the street. On June 27, 2012, Forman was in her kitchen, doing some dishes while in front of her kitchen window. While looking out that window and up the street to the left, around 12:30 p.m., Forman saw two young Black men, both wearing white shirts and dark pants, knocking aggressively on Kalra's front door, looking over their shoulders as they did so. The men then turned around to face the street and kicked the door behind them. They knocked again and then kicked the door a second time. By that time, Forman was on the phone to the Contra Costa Sheriff's Department, advising them of what she was seeing. The call came in at 12:35 p.m.; the transcript of the call was introduced into evidence and provided to the jury. She saw them break the door and enter the house. Moments later, the men went running from the house with nothing in their hands, and drove away in a metallic green car. Forman stayed on the phone with the sheriff's department, describing the car's movements as it drove around slowly in the area.

At 12:37 p.m., Deputy Sheriff Leah Stabio received a radio message reporting this incident. Within a very short time, she saw a metallic green car carrying three Black males a half a block away from the Kalra house. She pulled the car over and reported being "on scene" at 12:39 p.m. Appellant was in the driver's seat, sweating and acting nervously. He was wearing a white t-shirt and jeans. After other officers arrived and

2

detained the three men, Deputy Stabio went back to the Kalra house, where she found the front door open and its frame shattered.

Deputy Stabio also located neighbor and witness Forman, and asked her to view an in-field lineup. Forman promptly identified appellant and another man named Goodwin as the two men she had seen battering the door of the Kalra home.

On July 11, 2012, the Contra Costa County District Attorney filed a felony complaint charging appellant with first degree residential burglary in violation of Penal Code sections 459 and 460, subdivision (a). After a two-day jury trial, appellant was convicted of those offenses. On May 24, 2013, the trial court sentenced him to four years in state prison.

On July 22, 2013, appellant filed a timely notice of appeal.

B.      *The Habeas Corpus Petition*.[1]

After filing the opening brief in his appeal, petitioner also filed a petition for writ of habeas corpus. We issued an order to show cause; the Attorney General filed a return on behalf of the Director of the California Department of Corrections and Rehabilitation (respondent); and petitioner filed a traverse. By a previous order, we consolidated the petition with the appeal for argument and decision.

The Petition

The petition states that Amy Babbits was appointed as petitioner's defense counsel and first appeared in court for him in November 2012.

In support of the petition, Ford-Howard submitted his own declaration stating that, at the pretrial conference on March 26, he was offered a plea bargain which included probation and no more than one year in county jail. He attended the preliminary hearing, heard the eyewitness testify, and realized that his chance of prevailing at trial was "very slim." When his attorney informed him of the offer, she did not state that the offer would expire at the readiness conference and did not inform him that if he did not accept the

_____

[1] In their briefing of the habeas petition, both parties refer to the appellate record as well as to evidence submitted in the habeas proceeding. We will do the same.

offer at the readiness conference he would have to go to trial and, if convicted, would likely face a midterm sentence of four years in prison. He would have accepted the plea offer at the readiness conference if he had known that that was the deadline. At trial call on April 22, 2013, his counsel advised the deputy district attorney that he wanted to accept the plea offer. The deputy district attorney informed her that the offer had expired 12 days earlier at the readiness conference and petitioner's only choice was to plead as charged or go to trial. Petitioner "strongly urged her to tell the judge she had made a mistake by not telling me that the offer would expire at the readiness conference and that I would have accepted the offer at the time had I known the readiness conference was the deadline for accepting the offer. She responded that nothing could be done and said nothing to the judge. At the sentencing hearing, she did not mention the circumstances of the offer being taken off the table."

In the posttrial defense sentencing brief, Babbits stated: "At the trial call Deshawn Ford-Howard expressed a desire to plead guilty to the crime and accept the offer from the District Attorney that was presented at the pre trial conference. The trial was continued for two days and I spoke to the Assistant District Attorney who informed me that the offer was withdrawn after the readiness conference (a fact unknown to me) and the offer was now plead as charged. Having essentially no offer Deshawn Ford-Howard proceeded with trial. I did not communicate to Deshawn Ford-Howard that the offer expired after the readiness conference because this was a fact unknown to me until two days before trial."

The probation officer's report to the trial court contains the following statement: "[D]efense counsel Amy Babbits . . . explained that the defendant had planned to accept the district attorney's plea deal of probation; however, she did not know that offer was rescinded at the readiness conference."

Petitioner also submitted the declaration of Daniel Cook, a deputy public defender in the Contra Costa County Public Defender's Officer from 1986 to 2007, and in private criminal law practice in the county since 2007. Cook stated that it was the common practice and policy of the Contra Costa County District Attorney's office that offers to

4

plead guilty in exchange for a lesser term of incarceration expired at the readiness conference, when the parties confirm their readiness to proceed with trial. At that time, all unaccepted offers are deemed rejected. Cook also stated that, in March and April 2013, "I was aware, as I believe almost every defense attorney practicing in the criminal courts of Contra Costa County would have been aware, that offers to plead made at . . . any time prior to the Readiness Conference expired if not accepted at the Readiness Conference in the absence of an explicit agreement between defense counsel and the prosecutor to the contrary."

The Return

The return is supported by the declaration of Deputy Attorney General Na'Shaun Neal, which contains statements made to him by Scott Prosser and Steven Bolen, the Contra Costa County Deputy District Attorneys who handled the pretrial and trial proceedings, respectively, in this matter. The Neal declaration also represents that Messrs. Prosser and Bolen "will submit declarations confirming these statements."

Respondent admitted that the deputy district attorney presented a plea offer of formal felony probation for three years and 180 days in county jail in exchange for petitioner's plea of guilty to first degree residential burglary. Respondent also admitted the allegation that "the Contra Costa County District Attorney has a common practice and policy that all plea offers made to the defendant to plead guilty in return for a lesser term of incarceration expire[] at the readiness conference," although respondent denied that " 'almost all defense counsel practicing in Contra Costa County criminal court were aware or should have been aware of that practice' because this is an unwritten policy."

Respondent denied petitioner's allegation that he was prepared to accept the plea offer. Respondent asserted there were plea negotiations back and forth, petitioner did not want to serve any jail time, and petitioner did not want to plead guilty to burglary because he would lose his job.

Respondent admitted (1) defense counsel stated in her sentencing brief that she did not know the expiration date of the plea offer; (2) she tried to accept the plea offer at trial call on April 22, 2013, but was informed by the deputy district attorney that the offer had

expired; and (3) the deputy district attorney advised her that petitioner's only option was to plead guilty and await sentencing. In addition, respondent admitted the statements by defense counsel in her sentencing brief and that the probation officer's report contained statements by counsel that were consistent with the statements in the sentencing brief.

The Traverse

The traverse includes a supplemental declaration by Daniel Cook regarding common practices as to plea negotiations, including that those negotiations commonly go back and forth, the prosecutor's last offer typically will be available to a defendant until the conclusion of the readiness conference, and offers rejected or otherwise not accepted by the time of the readiness conference are withdrawn with no implied agreement that those offers will later be re-offered.

Also in the traverse, petitioner objects to the Neal declaration as support for the return on the grounds that (1) the statements of Prosser and Bolen are inadmissible hearsay and (2) any declarations by Prosser and Bolen would be untimely, having been filed after the deadline set by this court for the filing of the return. The traverse is supported by appellate counsel's declaration stating that, on the morning of the due date for the filing of the traverse, he had not received any additional declarations supporting the return, nor did the docket page of the court's website indicate any such filing.[2]

## DISCUSSION

A.   *Legal Principles.*

A criminal defendant's Sixth Amendment right to counsel includes the effective assistance of counsel during plea-bargaining. (*Lafler v. Cooper* (2012) __ U.S. __, 132 S.Ct. 1376, 1385 (*Lafler*); *Missouri v. Frye* (2012) __ U.S. __, 132 S.Ct. 1399, 1406-1407 (*Frye*); *In re Alvernaz* (1992) 2 Cal.4th 924, 933 (*Alvernaz*).)

---

[2] The declarations of Prosser and Bolen in support of the return were not served or lodged with the court until the day after petitioner's traverse was due and filed, and are, therefore, untimely. The Attorney General provided no justification for the delay. However, in the interests of judicial economy, we will exercise our discretion to consider the declarations in support of the return.

"[P]lea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages. Because ours 'is for the most part a system of pleas, not a system of trials' (*Lafler*, [*supra*, 132 S.Ct. at p. 1388]), it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process. 'To a large extent . . . horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it *is* the criminal justice system.' [Citations.] In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant." (*Frye*, *supra*, 132 S.Ct. at p. 1407.)

Claims of ineffective assistance of counsel arising in the plea bargaining context are governed by the two-part test set forth in *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*). (*Lafler*, *supra*, 132 S.Ct. at p. 1384; *Frye*, *supra*, 132 S.Ct. at p. 1405; *Alvernaz*, *supra*, 2 Cal.4th at pp. 936-937.) Under *Strickland*, a defendant must show both deficient performance, i.e., that counsel's representation fell below an objective standard of reasonableness, and prejudice, i.e., a reasonable probability that he would have obtained a more favorable result in the absence of counsel's unprofessional errors. (*Strickland*, *supra*, 466 U.S. at pp. 688, 694; *Alvernaz*, *supra*, 2 Cal.4th at pp. 936-937.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, *supra*, 466 U.S. at p. 694.)

In the context of plea bargaining, "a defendant must show the outcome of the plea process would have been different with competent advice." (*Lafler*, *supra*, 132 S.Ct. at p. 1384, citations omitted.) "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in a conviction on more serious charges or the imposition of a more severe sentence." (*Lafler*, *supra*, at p. 1387.)

7

B.      *Analysis*.

Petitioner contends that his trial counsel was required to inform him that the plea offer would expire at the readiness conference and that her failure to do so caused him to miss his opportunity to accept it. He argues that her deficient performance constituted ineffective assistance of counsel in violation of his state and federal rights to counsel, and that his conviction must be reversed.

1.      *Deficient Performance*.

Under the *Strickland* test, we have no difficulty in concluding that counsel's unawareness of, and failure to determine, the expiration date of the plea offer fell below an objective standard of reasonableness. (*Strickland*, *supra*, 466 U.S. at pp. 688, 694.) It is well established that plea offers may have deadlines for their acceptance. (See *People v. Cobb* (1983) 139 Cal.App.3d 578.) Petitioner alleges, and respondent admits, the policy and practice of the Contra Costa County District Attorney's office that all unaccepted plea offers expire and are deemed rejected after the readiness conference. The Cook declaration provides additional support for the conclusion that defense counsel's failure to discover this policy and practice and to communicate the expiration date of the plea offer to petitioner in time for him to take action on that offer constituted deficient performance.

Respondent raises two arguments that petitioner did not receive ineffective assistance of counsel when the plea offer lapsed. Neither argument is persuasive. First, respondent contends that counsel's performance was not deficient because the lapsed offer merely reflected the district attorney's prerogative to revoke the offer at any time. We disagree. Although the district attorney may have such authority, the salient point is that the evidence here shows no such revocation. Rather, the Bolen declaration states that "[p]rior to the readiness conference, [defense counsel] informed me that [petitioner] did not want to accept the plea offer because if he pleaded to burglary, he would lose his job. I understood this as a rejection of our initial plea offer." Notably, Bolen, who attended pretrial proceedings including the readiness conference, did not state that the offer was revoked or indicate any intention on the part of the district attorney's office to revoke it.

8

Second, respondent argues counsel's ignorance of the district attorney's policy and practice was not unreasonable because the policy was unwritten. However, respondent cites no authority for the proposition that familiarity with unwritten policies that bear on a criminal defendant's constitutional rights to adequate representation is optional. On the contrary, respondent acknowledges that counsel has a "duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he was entitled." (*In re Williams* (1969) 1 Cal.3d 168, 175.) Counsel's "duty to investigate carefully" necessarily includes the duty to ascertain all pertinent facts regarding a plea offer, among them any deadline for its acceptance.

2. *Prejudice*.

Petitioner argues that he was prejudiced by his trial counsel's ineffective assistance because, due to counsel's mistake, he was not able to accept the plea offer which limited his confinement to a maximum of one year in county jail, and instead had to proceed to trial, following which he was sentenced to four years in state prison. But for counsel's error, he contends, he would have received a far lesser sentence.

To establish prejudice in the context of the plea bargaining process, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." (*Lafler*, *supra*, at p. 1385.)

Petitioner has made a sufficient showing that the offer would have been presented to the court. First, he has shown that he would have accepted the plea offer. Petitioner stated in his declaration that he wanted to accept the offer and his counsel attempted to do so on his behalf. His counsel's statement to that effect in the defense sentencing brief and Deputy District Attorney Prosser's declaration that defense counsel stated on the

9

record at the trial call that her client wished to take the plea offer corroborate petitioner's statement.

Respondent challenges petitioner's assertion that he would have taken the plea, citing to the Prosser and Bolen declarations regarding plea negotiations and defense counsel's representations that petitioner wanted to plead to a lesser charge and to avoid any jail time. We reject the contention, for two reasons. First, plea bargaining is frequently a back-and-forth process of negotiation. Second, and more importantly, petitioner's attempt to take the offer at the trial call demonstrated his determination to accept the deal that was offered.

Petitioner has also made a sufficient showing that the district attorney's office would not have withdrawn the offer. Respondent makes no argument in this regard, and the record reflects no changes in circumstances and no intervening events that could have led to withdrawal of the offer. (See *Frye*, *supra*, 132 S.Ct. at p. 1411 [defendant failed to establish prejudice from lost opportunity to accept plea due to his re-arrest for another offense prior to the preliminary hearing].) Thus, petitioner has adequately established that, but for counsel's error, the offer would have been presented to the court.

Next, petitioner must establish a reasonable probability that the court would have accepted the plea bargain. (*Frye*, *supra*, 132 S.Ct. at p. 1409; *Lafler*, *supra*, 132 S.Ct. at p. 1385; *Alvernaz*, *supra*, 2 Cal.4th at pp. 940-941.) Respondent argues that petitioner has failed to make this showing and that the court would have rejected the plea pursuant to Penal Code sections 1192.7 and 1203, subdivision (k), which limit plea bargaining in cases charging a serious felony and restrict eligibility for probation.[3] According to

---

[3] Penal Code section 1192.7, subdivision (a)(2), provides: "Plea bargaining in any case in which the indictment or information charges any serious felony . . . is prohibited, unless there is insufficient evidence to prove the people's case, or testimony of a material witness cannot be obtained, or a reduction or dismissal would not result in a substantial change in sentence." Subdivision (c)(18) of section 1192.7 provides that "serious felony" includes "any burglary of the first degree." Section 1203, subdivision (k), provides: "Probation shall not be granted to, nor shall the execution of, or imposition of sentence be suspended for, any person who is convicted of . . . a serious felony, as defined in

10

respondent, the record contains no indication that the trial court was willing to approve a plea bargain under these circumstances.

We find respondent's argument troubling, for it suggests that the Contra Costa District Attorney's office would extend a plea offer to a criminal defendant with no expectation that the court would approve it. In turn, petitioner urges that we "must assume" that the offer was extended in good faith and that the prosecution would have made appropriate representations to the court to facilitate acceptance of the bargain. Regarding the charged offense, as petitioner points out, nothing was taken from the home and no one was harmed. Petitioner also relies on the declaration of Cook, who stated, based on his years of experience in the Contra Costa Superior Court, that "plea agreements between the prosecution and defense pursuant to California Penal Code section 1192.5 are routinely the basis for settlement of criminal cases. The terms and conditions of such agreements are, on occasion, but rarely, rejected by the Court."

Although "we may not simply *presume* . . . that the trial court automatically would have approved a plea bargain negotiated by the prosecutor and the defense" (*Alvernaz*, *supra*, 2 Cal.4th at p. 941), we conclude on this record that petitioner has shown a reasonable probability that the proffered plea bargain would have been approved by the trial court.

Finally, here it is undisputed that petitioner's sentence under the terms of the offer would have been less severe than under the judgment and sentence that were in fact imposed. (*Lafler*, *supra*, at p. 1385.)

## DISPOSITION

The judgment of conviction is vacated, and the cause is remanded for further proceedings consistent with this opinion. Petitioner is to be credited with time served, including applicable credits for time served in state prison, and applicable credits for time served in county jail prior to his placement in state prison. We further order that

subdivision (c) of Section 1192.7, and who was on probation for a felony offense at the time of the commission of the new felony offense."

11

petitioner be given the opportunity to accept the plea offer made at the pretrial conference in March 2013 and the parties present the plea bargain to the superior court. The appeal from the judgment is dismissed as moot. The clerk of this court is directed to give the required notice to the State Bar of California and to trial counsel. (Bus. & Prof. Code, § 6086.7; Cal. Rules of Court, rule 10.1017.)

_____

Richman, J.

We concur:

_____

Kline, P.J.

_____

Brick, J.[*]

_____

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.